GATES ET AL., APPELLANTS, *v.*
BREWER ET AL., APPELLEES.

(No. 80AP-726—Decided May 14, 1981.)

*Michael F. Colley & Associates* and *Mr. Frank A. Ray,* for appellants.

*Messrs. Lane, Alton & Horst, Mr. Jack R. Alton* and *Mr. Gayle E. Arnold,* for appellees.

STRAUSBAUGH, P.J. This is an appeal of a judgment rendered by the Court of Common Pleas of Franklin County in favor of defendant-appellee Thomas H. Brewer, M.D. On November 5, 1974, plaintiffs-appellants, Willie and Helen Gates, filed a complaint in the court of common pleas alleging medical malpractice against Dr. Brewer.

During the course of the trial, Charles Turner, Administrator of defendant-appellee, St. Anthony Hospital, was served with a subpoena duces tecum ordering him to testify at said trial and ordering him to bring the following:

"All records concerning the performance of Dr. Thomas H. Brewer as a physician at St. Anthony Hospital, including but not limited to reports of conduct and restrictions implemented by the hospital on his medical practice there."

In response to that subpoena duces tecum, counsel for St. Anthony Hospital appeared before the trial court and moved that the subpoena duces tecum be quashed and that a protective order be issued preventing plaintiffs from obtaining access to the requested materials, pursuant to R.C. 2305.251. This appeal centers on the decision of the trial court to grant the protective order and quash the subpoena duces tecum. In appealing the

decision of the trial court, plaintiffs raise the following assignments of error:

"1. The trial court erred by quashing a subpoena of a hospital administrator to produce certain records relating to the performance of the defendant/physician by relying upon Sections 2305.25 and 2305.251 of the Ohio Revised Code, which sections are violative of the U.S. and Ohio Constitutions.

"2. The trial court erred by quashing a subpoena of a hospital administrator to produce certain records relating to the performance of the defendant/physician by relying upon Sections 2305.25 and 2305.251 of the Ohio Revised Code, which did not apply."

Plaintiffs present three arguments in support of the first assignment of error. Plaintiffs argue that R.C. 2305.25 and 2305.251 violate the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution by granting a special privilege and immunity to negligent physicians whose negligence is the subject of disciplinary action by a medical review committee. Plaintiffs also contend that the statutes in question deny plaintiffs in medical malpractice actions due process of law in that said statutes prevent plaintiffs access to the courts to recover damages. Additionally, plaintiffs argue that said statutes are in conflict with the right to discovery as defined by Civ. R. 26(B) and, therefore, in violation of Section 5(B), Article IV of the Ohio Constitution.

R.C. 2305.25 provides:

"No member or employee of a utilization review committee or tissue committee of a hospital or of a community mental health center or of a utilization committee of a state or local society composed of doctors of medicine or doctors of osteopathic medicine and surgery or doctors of podiatric medicine or of a peer review or professional standards review committee of a state or local society composed of doctors of medicine, doctors of osteopathic medicine and surgery, doctors of dentistry, doctors of optometry, doctors of podiatric medicine, psychologists, or registered pharmacists shall be deemed liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee, if such committee member or employee acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him after reasonable effort to obtain the facts of the matter as to which such action is taken or recommendation is made.

"This section shall also apply to any member or employee of a nonprofit corporation engaged in performing the functions of a peer review or professional standards review committee and shall apply to any member or employee of a hospital board or committee reviewing professional qualifications or activities of its medical staff or applicants for admission thereto."

R.C. 2305.251 provides:

"Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional or institution arising out of matters which are the subject of evaluation and review by such committee. No person within attendance at a meeting of such committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any finding, recommendation, evaluation, opinion, or other action of such committee or member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of such committee nor should any person testify-

ing before such committee or who is any member of such committee be prevented from testifying as to matters within his knowledge, but the witness cannot be asked about his testimony before such committee or opinion formed by him as a result of such committee hearing."

An examination of the above statutes reveals that members of the medical profession are accorded different treatment concerning the admissibility of any evidence in a civil action of the proceedings of a medical group or organization charged with the responsibility of review and discipline. We know of no other profession in which the proceedings of a disciplinary organization are inadmissible. Under traditional equal protection analysis, where the statutory classification does not affect a fundamental interest and when said classification is not based on "suspect" criteria, the classification will be upheld if there exists any conceivable set of facts under which the classification rationally furthers a legitimate legislative objective. *McGowan* v. *Maryland* (1961), 366 U.S. 420 [17 O.O.2d 151].

Plaintiffs contend that the statutes in question are unreasonable, having no fair and substantial relation to the admitted legitimate purpose of improving the quality of health care administered to the public. We disagree. After examination of the statutes in question, we find that a legislator could rationally believe that by conferring a privilege from discovery upon the proceedings of a medical disciplinary committee the quality of public health care would increase. By placing a blanket of confidentiality over such disciplinary and review proceedings, the legislature has provided for a manner in which a hospital or medical association may take remedial measures for the improvement of the care and treatment of patients. If said proceedings were the subject of discovery, the candid and conscientious opinions or evaluations necessary to the success of such a review would remain

hidden for fear of their use in a civil action brought against a hospital or colleague. In essence, hospital and medical review or discipline committees would not be encouraged to evaluate a practitioner or clinical method for disciplinary measures or improvement until the close or settlement of a civil action or the passing of a statute of limitations.

Plaintiffs are correct in their assertion that the purpose of tort law and litigation is to allow the injured party to recover damages and to achieve a desirable social result. However, one cannot argue the "rationality" of allowing for the *immediate* improvement of health care accorded the public through an investigation conducted by experienced medical professionals, in addition to the long-range improvements achieved through legal proceedings. In no other professional area is the need for immediate remedial measures as essential or important than in the health care profession.

Based on the foregoing, we find that R.C. 2305.25 and 2305.251 do not violate the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution, nor the equal protection standards of Section 2, Article I of the Ohio Constitution.

The test to measure the validity of the statutes in question, under the Due Process Clause, is whether said statutes have a reasonable relation to a proper legislative purpose without being arbitrary or discriminatory. *State, ex rel. Allstate Ins. Co.,* v. *Bowen* (1936), 130 Ohio St. 347. In light of our analysis above, we conclude that said statutes are reasonably related to the legitimate purpose of improving public health care. We do not accept plaintiffs' contention that the application of R.C. 2305.25 and 2305.251 denies plaintiffs in medical malpractice cases access to the courts. While said statutes do make certain types of evidence inadmissible, plaintiffs in medical malpractice cases are not now

faced with an insurmountable burden of proof, nor barred from introducing other types of relevant evidence to meet such a burden. Accordingly, said statutes do not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Plaintiffs additionally contend, in support of their first assignment of error, that R.C. 2305.251 violates Section 2, Article I of the Ohio Constitution, because it conflicts with Civ. R. 26(B). Civ. R. 26(B)(1) defines the scope of discovery in civil actions as follows:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

This court encountered a similar argument in the case of *Hearing* v. *Delnay* (Dec. 21, 1976), Franklin App. No. 79AP-493, unreported, in which it was alleged that R.C. 2307.42(C) was unconstitutional as it conflicted with Civ. R. 8(A) and 54(C). In resolving this issue, Judge (now Justice) Holmes stated:

"It is well recognized, and we concur, that this provision of the Modern Courts Amendment, giving the Supreme Court the major rule-making function, was a salutory [sic] one. We also endorse the thought that, in the main, the Supreme Court should be the body that prescribes rules of practice and procedure in all courts of the state. However, we hasten to point out that the empowering words of the Constitution are not words singularly

granting the rule-making power to the Supreme Court. There is no specific language excluding the legislature from this field. We feel that this court should not supply such exclusionary language to the Constitution.

"Further, the language of Article IV, Section 5(B) of the Ohio Constitution states in effect that all laws in conflict with the rules shall be of no *further* force or effect, *after* the rules have taken effect. The majority herein feel that such language of the Constitution refers and applies only to those statutes in force at the time the Civil Rules became effective on July 1, 1970. The intent as clearly expressed by such language was to provide for the repeal of those statutes in conflict with the rules on July 1, 1970. If the intent of the framers of the language of the constitutional amendment would have been otherwise, it would have been a simple procedure to have provided for the predominance of any rule as found to be in conflict with any law enacted after the effectiveness of the rule. Such not having been done, we hold that the section of law questioned here, that is, R.C. 2307.42(C), prevails, and does no violence to Article IV, Section 5 of the Ohio Constitution." (Emphasis *sic*.)

We adopt the above statements and, accordingly, find that R.C. 2305.251, which became effective on July 28, 1975, does not violate Section 5, Article IV of the Ohio Constitution.

We find that R.C. 2305.251 is on its face constitutional and, accordingly, we find plaintiffs' first assignment of error to be not well taken and the same is overruled.

Plaintiffs' second assignment of error raises the issue of the trial court's application of R.C. 2305.251 in quashing the subpoena and granting a protective order. It is plaintiffs' contention that R.C. 2305.251 is not applicable to this case as plaintiffs were denied access to the procedures and decisions of the *administration* of St. Anthony Hospital.

It should be noted that the language of R.C. 2305.251 limits its application to specific types of evidence and testimony. When a trial court is presented with a situation in which an individual attempts to avoid testimony or a party attempts to prevent the introduction of certain evidence by asserting the privilege defined in R.C. 2305.251, it is incumbent upon the trial court to hold an *in camera* inspection of the information, documents or records in question and to question the witness as to the nature of his testimony. By virtue of the *in camera* inspection and the questioning of the witness, the trial court then can make an informed decision as to the admissibility of the evidence and testimony in relation to R.C. 2305.251.

In this case the record consists of the transcript of the proceedings in the trial court, when counsel for St. Anthony Hospital appeared before the court and moved to quash the subpoena and to grant a protective order. The trial court granted said motions without an *in camera* inspection. An examination of the record reveals no indication as to the information, records and documents which plaintiffs subpoenaed or as to the nature of the testimony of Charles Turner, the Administrator of St. Anthony Hospital.

In reviewing the language of the subpoena served upon Mr. Turner, it should be noted that plaintiffs requested all records concerning the performance of Dr. Brewer. As we construe R.C. 2305.251, the following records are protected from discovery by R.C. 2305.251:

(1) Any records or transcript of proceedings of a review committee defined in R.C. 2305.25 which considered the conduct of the defendant;

(2) Any evidence produced or presented at such proceedings, unless said evidence (information, documents or records) became available to the subpoenaed witness (in this case, Mr. Turner) in any other capacity besides as a member of said committee;

(3) Any finding, recommendation, evaluation, opinion, or other action of said committee.

In addition, we note that the testimony of Mr. Turner must be limited to matters within his personal knowledge and not include information he received or opinions he has formed as a result of being on a review committee which considered the professional conduct of defendant.

Plaintiffs' second assignment of error is, therefore, well taken and is sustained. The trial court erred by its failure to conduct an *in camera* inspection of the records subpoenaed by plaintiffs. The judgment of the trial court is reversed and the cause is remanded to the trial court for an *in camera* inspection of the records subpoenaed by plaintiffs and a determination as to whether any material should have been admitted. The trial court must also determine whether the failure to admit such material was prejudicial. If so, plaintiffs should be granted a new trial.

*Judgment reversed and cause remanded.*

MOYER and NORRIS, JJ., concur.