This case presents a timely appeal of a jury verdict and judgment rendered by the Mahoning County Common Pleas Court in favor of defendant-appellee, Western Reserve Care System.
On December 24, 1991, the decedent, Robert McCarthy, experienced chest pains and presented himself to his family physician with symptoms of a myocardial infarction. Two days later, a cardiologist performed a cardiac cath, diagnosed Mr. McCarthy with coronary artery disease, and required him to undergo a quadruple coronary artery by-pass grafting procedure. Dr. John Agnone, a cardiovascular surgeon, performed the operation that same day.
On January 3, 1992, while hospitalized, Mr. McCarthy suffered a cardiopulmonary arrest. In response, an express team, composed of various medical personnel who were employees, agents, and/or principals of appellee, administered various life saving procedures. Additionally, Dr. Agnone reopened Mr. McCarthy's chest and provided direct heart massage. As a result of his cardiopulmonary arrest, Mr. McCarthy suffered hypoxic encephalopathy and lapsed into a coma. He was cognizably unable to respond to commands and physically dependent on others for his care. On March 26, 1993, Mr. McCarthy died as a result of a pulmonary embolism, causing him to suffer another cardiopulmonary arrest.
Subsequently, plaintiffs-appellants, Roberta McCarthy, et al, executrix of the estate of Robert McCarthy, brought suit against appellee and Dr. John Agnone, an independent staff surgeon, alleging that their medical negligence was the proximate cause of Mr. McCarthy's death. However, a few months before trial, appellants voluntarily dismissed Dr. Agnone without prejudice. During discovery, appellants sought to obtain the Express Team Quality Assurance Audit Sheet ("Audit") prepared after the express team response to Mr. McCarthy's cardiopulmonary arrest on January 3, 1992.
The Audit was part of a two-page document included on the express team's crash cart. The second page of the document was the Express Team Flow Sheet which a nurse or physician prepared during an express team response and was included in the patient's hospital record. Subsequent to an express team response, the team's charge nurse or physician prepared the Audit. Unlike the Express Team Flow Sheet, the Audit was not included in the patient's hospital record. Instead, the Quality Assurance Committee for internal medicine, led by the Chairman of the Department of Internal Medicine, received the document, reviewed it, and evaluated the express team response. This system of review allowed independent third parties to assess an express team response and to recommend to the hospital's Board of Trustees ways to improve the quality of care which the hospital's patients receive from its staff.
On September 13, 1996, prior to trial, appellants served a subpoena duces tecum on William C. Quinlan, R.N., appellee's Risk Manager. Appellee filed a motion in limine, January 6, 1997, asking the trial court to exclude the testimony of Mr. Quinlan regarding the Audit. Appellee argued that the Audit and information concerning it was confidential pursuant to R.C.2305.24 and R.C. 2305.251. The trial court held an in camera voirdire of Mr. Quinlan. In accordance with R.C. 2305.24 and R.C. 2304.251, the trial court granted appellee's motion in limine, effectively precluding Mr. Quinlan from testifying about the Audit or the Policy and Procedure Manual regarding quality assurance reviews.
The case proceeded to a trial before a jury. On January 15, 1997, the jury rendered a unanimous verdict in favor of appellee. Subsequently, on January 21, 1997, the Mahoning County Common Pleas Court entered a judgment on the verdict. The within appeal followed.
Appellants' sole assignment of error on appeal states as follows:
 "The Trial Court was wrong to exclude any testimony regarding the express team evaluation or questioning regarding the policy and procedures related to such evaluation. The in-camera testimony of Defendant, Western Reserve Care System's Risk Manager, William Quinlan, shows that the evaluation form in the present case was neither confidential, pursuant to R.C. 2305.24, nor privileged, under R.C. 2305.251 (The in-camera testimony of Quinlan, was attached to the Motion for the New Trial, and is, again, attached as `Exhibit 3')."
Appellants argue that they are entitled to a new trial, as the jury's verdict was manifestly wrong based on the evidence presented at trial. Appellants contend that the Audit was otherwise available from its original source in that Mr. Quinlan's testimony did not establish that the Audit was completed by a member of the Peer Review Committee or even whether one was prepared for Mr. McCarthy. Moreover, appellants posit that appellee has failed to show that the Audit is a record exclusively used for quality assurance. Appellants stress that because no evidence conclusively establishes that an Audit was prepared by a member of the peer review committee, the privilege of confidentiality granted by R.C. 2305.251 does not apply.
This court affirms the trial court's decision granting judgment on the jury verdict. Mr. Quinlan's in camera testimony indicated that according to hospital policy, the Audit was used in the quality assurance review and then destroyed but was not made a part of the patient's hospital record. The trial court did not abuse its discretion in excluding the testimony of Mr. Quinlan and reference to a pre-printed blank Audit, as this evidence was used exclusively for quality assurance purposes and was confidential and privileged pursuant to R.C. 2305.24 and R.C. 2305.251.
At the outset, our standard of review on appeal must be noted. Evid.R. 104 (A) gives the trial judge discretion to determine the admissibility of evidence. Alexander v. Mt. CarmelMed. Ctr. (1978), 56 Ohio St.2d 155. This court shall not disturb the trial court's decision regarding the admissibility of evidence unless we find that the trial court clearly abused its discretion.Shumaker v. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Tracy v. Merrill-DowPharmaceutical, Inc. (1991), 58 Ohio St.3d 147, 152. In deciding whether a claim of confidentiality has merit, the trial court should hold an in camera inspection of allegedly privileged information. State ex rel. Grandview Hosp. and Medical Ctr. v.Gorman (1990), 51 Ohio St.3d 94; Gates v. Brewer, (1981), 2 Ohio App.3d 347.
The confidentiality of information furnished to quality assurance and utilization review committees of health care facilities is governed by statute. Evid.R. 501. R.C. 2305.24
provides, in pertinent part, that "[a]ny information, data reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * shall be confidential * * *." More specifically, R.C. 2305.251 states:
 "Proceedings and records within the scope of the peer review or utilization review functions of all review boards, committees, or corporations described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, a hospital, * * * arising out matters that are the subject of evaluation and review by the review board, committee, or corporation. No person in attendance at a meeting of a review board, committee, or corporation or serving as a member or employee of a review board, committee, or corporation shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the review board, committee, or corporation as to any finding, recommendation, evaluation, opinion or other action of the review board, * * *."
R.C. 2305.251 provides an exception to this privilege of confidentiality. The exception provides that "[i]nformation, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a review board committee * * *." In Ware v. MiamiValley Hospital (1992), 78 Ohio App.3d 314, the appellate court found that an incident report which was not a part of the patient's medical record was not "otherwise available from original sources," and thus, was a privileged communication even though it related to the care and treatment of the patient.
The primary goal of statutory construction is to give effect to the legislature's intent. Brooks v. Ohio StateUniversity (1996), 111 Ohio App.3d 342, 349. R.C. 2305.24, R.C.2305.25, and R.C. 2305.251 are clear and unambiguous. Brook,supra. In Gates, supra, the court noted that the privilege from discovery of the proceedings of medical review committees may have arose from the legislature's concern with an increase in the quality of public health care. The court stressed:
 "By placing a blanket of confidentiality over such disciplinary and review proceedings, the legislature has provided for a manner in which a hospital or medical association may take remedial measures for the improvement of the care and treatment of patients. If said proceedings were the subject of discovery, the candid and conscientious opinions or evaluations necessary to the success of such a review would remain hidden for fear of their use in a civil action brought against a hospital or colleague. In essence, hospital and medical review or discipline committees would not be encouraged to evaluate a practitioner or clinical method for disciplinary measures or improvement until the close or settlement of a civil action or the passing of a statute of limitations." Gates, supra at 349.
The trial court did not abuse its discretion in excluding evidence of the Audit pursuant to the peer review privilege of R.C. 2305.24 and 2305.251. That document was not otherwise available from its original source, as it was never made, nor intended to be made, a part of Mr. McCarthy's hospital record. Mr. Quinlan explained the hospital's policy regarding an express team response. He stated that two blank documents are present on each express team crash cart — the Express Team Flow Sheet and the Audit. The Express Team Flow Sheet is made a part of the patient's hospital record and indicates the names of all individuals with personal knowledge of what occurred during the express team response. As this document was in evidence, it provided appellants with any information regarding the express I team response needed to support their case.
Contrarily, the Audit was not made a part of Mr. McCarthy's medical record. This document was privileged information pursuant to R.C. 2305.24 and R.C. 2305.251. Taken together, R.C. 2305.24 and R.C. 2305.51 clearly and unambiguously declare that information, reports, or records made available to a quality assurance committee, peer review committee, or utilization committee of a hospital which are not otherwise available fromtheir original sources shall be confidential. The Audit allowed the hospital's quality assurance committee to review the express team response and, if necessary, to provide recommendations to the hospital's Board of Directors in order to improve the quality of medical care which the hospital's staff provides to its patients. According to hospital policy, once the appropriate individuals reviewed tie Audit, it was destroyed.
In their brief, appellants assert, without support, that "if the evaluation is not shown to have been made by a member of the Peer Review Committee, the privilege granted by R.C. 2305.251
does not apply, as it is information otherwise available from its original source, and that would be the non-Peer Review Committee individual who prepared it." The statute does not require that a member of a quality review committee prepare the information, data or report at issue. It requires only that the information be made available or within the scope of a peer review or utilization review committee. Appellants' logic, followed to its end, is inconsistent with the statute, for every piece of information presented for peer or utilization review would be discoverable and nothing would be privileged. This court will not disturb the legislature's intent by allowing the exception to eviscerate the rule.
The purpose of peer review and quality assurance is to allow independent third parties to review both the individual and team performance of health care providers in an effort to improve the overall quality of health care. The confidentiality of information which reach this important system of review is necessary for its success. Accordingly, the trial court correctly excluded all evidence relating to the Audit.
Appellants' assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ____________________________________ EDWARD A. COX, PRESIDING JUDGE