**WILSON, Appellee,**

v.

**BARNESVILLE HOSPITAL, Appellant.**

[Cite as *Wilson v. Barnesville Hosp.*, 151 Ohio App.3d 55, 2002-Ohio-5186.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 01 BA 40.

Decided Sept. 27, 2002.

Hardin & Schaffner, L.P.A., Thomas W. Hardin, David K. Schaffner and John P. Maxwell, for appellee.

Reminger & Reminger, L.P.A., and Thomas W. Hunter, for appellant.

---

DEGENARO, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral argument to this court. Appellant, Barnesville Hospital Association, Inc., appeals from the judgment of the Belmont County Court of Common Pleas ordering the hospital to produce the credentialing files of Dr. Richard Phillips, M.D., upon motion by appellee, James L. Wilson. The issue we must decide is whether all documents available to a hospital peer review committee are privileged and therefore undiscoverable under Ohio's Peer Review Act and the Health Care Quality Improvement Act of 1986.

{¶ 2} In accordance with the clearly drawn exception to the privilege afforded by Ohio's Peer Review Act, we conclude that any documents or portions of documents available from their original sources are discoverable from a hospital in an action for negligent credentialing. Without their accessibility, there would be no reasonable means for Wilson, or any other plaintiff, to support a claim of negligent credentialing. Thus, for the following reasons, we remand this matter to the trial court so that it may determine which documents are in fact discoverable.

{¶ 3} On June 26, 1998, Wilson filed his original complaint alleging that both the hospital and Dr. Phillips were negligent in his care and treatment. In addition to these claims, Wilson alleged that the hospital was negligent in credentialing Dr. Phillips. Wilson voluntarily dismissed this action against both parties but refiled his action against the hospital. Wilson then served the hospital with discovery requests.

{¶ 4} Specifically, Wilson requested that the hospital produce Dr. Phillips's credentialing file maintained by the hospital. The hospital describes the file as containing (1) Dr. Phillips's application for appointment and privileges, (2) information gathered by the hospital to confirm the information contained in his application, (3) information gathered during the course of Dr. Phillips's appointment relating to quality of care and professional ethics, and (4) board decisions with respect to appointments and privileges.

{¶ 5} Believing that the information contained in the credentialing file was privileged under Ohio's Peer Review Act and the Health Care Quality Improvement Act of 1986, the hospital moved for a protective order. In response, Wilson requested that the trial court conduct an in camera review of the credentialing

file. The trial court granted the request and inspected the credentialing file. On July 10, 2001, the trial court found the entire file to be discoverable.

{¶ 6} The hospital appeals from this ruling, asserting as its sole assignment of error:

{¶ 7} "The trial court erred by ordering Barnesville Hospital Association, Inc. ('Barnesville Hospital') to produce the credentialing file pertaining to Dr. Richard Phillips, M.D."

{¶ 8} Because Wilson has brought a claim of negligent credentialing against the hospital, he has requested the hospital's credentialing file. The hospital argues that pursuant to Ohio's Peer Review Act, the records requested by Wilson are privileged and therefore nondiscoverable. Essentially, the parties both agree that this statute seeks to prevent a plaintiff from delving into the actual process of credentialing and the opinions and evaluations of the reviewing members. However, the hospital contends that *any* information that has been gathered, regardless of the source, is unavailable once placed in the credentialing file. Conversely, Wilson contends that all documents that could be obtained from their original sources should be discoverable from the hospital. Based upon the plain language of the statute and because the hospital's narrow interpretation of the statute leads to impractical results, we agree with Wilson.

{¶ 9} The Peer Review Act, R.C. 2305.251, provides:

{¶ 10} "Proceedings and records within the scope of the peer review or utilization review functions of all review boards, committees, or corporations described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against * * * a hospital * * * arising out of matters that are the subject of evaluation and review by the review board, committee, or corporation. No person in attendance at a meeting of a review board, committee, or corporation or serving as a member or employee of a review board, committee, or corporation shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the review board, committee, or corporation or as to any finding, recommendation, evaluation, opinion, or other action of the review board, committee, or corporation or a member or employee of it. * * *"

{¶ 11} However, the portion of the statute we find dispositive of this appeal reads:

{¶ 12} "Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a review board, committee, or corporation, nor should any person testifying before

a review board, committee, or corporation or who is a member or employee of the review board, committee, or corporation be prevented from testifying as to matters within the person's knowledge, but the witness cannot be asked about the witness's testimony before the review board, committee, or corporation or an opinion formed by the witness as a result of the review board, committee, or corporation hearing.* * *" Id.

{¶ 13} In *Kalb v. Morehead* (May 19, 1998), 4th Dist. No. 97CA2499, 1998 WL 254028, the Fourth District applied the plain language of the statute and concluded that the privilege does not extend to records or information otherwise available from original sources. The *Kalb* court observed, " 'Ohio courts have recognized this exclusion as a major exception. See, e.g., *Gates v. Brewer* (1981), 2 Ohio App.3d 347 [2 OBR 392, 442 N.E.2d 72] * * *; *Winters v. Lutheran Medical Ctr.* (1989), 43 Ohio App.3d 119 [539 N.E.2d 715] * * *.' *State ex rel. Grandview Hosp. & Medical Ctr. v. Gorman* (1990), 51 Ohio St.3d 94, 96, 554 N.E.2d 1297." Id. at 4.

{¶ 14} Therefore, if items in a defendant's personnel file were records presented to a review committee but were generated and available from other original sources, they would be discoverable. Id. The *Kalb* court further commented that without inspecting a defendant's personnel file, it would have been impossible for the trial court to determine whether the R.C. 2305.251 privilege applied to the entire file. The court concluded that the trial court abused its discretion by issuing a protective order on the basis of R.C. 2305.251 without inspecting the file. *Gorman; Winters; Gates.*

{¶ 15} In *Gates*, the plaintiffs subpoenaed records concerning the defendant's medical practice at a particular hospital. The trial court quashed the subpoena on the basis of R.C. 2305.251 without inspecting the records. The appeals court reversed, stating:

{¶ 16} "It should be noted that the language of R.C. 2305.251 limits its application to specific types of evidence and testimony. When a trial court is presented with a situation in which an individual attempts to avoid testimony or a party attempts to prevent the introduction of certain evidence by asserting the privilege defined in R.C. 2305.251, it is incumbent upon the trial court to hold an in camera inspection of the information, documents or records in question and to question the witness as to the nature of his testimony. * * * The trial court erred by its failure to conduct an in camera inspection of the records subpoenaed by plaintiffs." *Gates*, 2 Ohio App.3d at 351, 2 OBR 392, 442 N.E.2d 72.

{¶ 17} In a more recent decision, the Eighth District found that "[a]pplying the privileges set forth in R.C. 2305.24, 2305.25 and R.C. 2305.251 to actual documents is a difficult task. See *In re Grandview Hospital* (1990), 51 Ohio

St.3d 94, 96, 554 N.E.2d 1297. An in camera inspection allows the trial court to make an informed decision as to the admissibility of the evidence in relation to these statutory privileges. See *Gates* at 351 [2 OBR 392], 442 N.E.2d 72." *Johnson ex rel. Estate of Johnson v. Univ. Hosp. of Cleveland* (Mar. 28, 2002), 8th Dist. No. 80117, 2002 WL 472298.

{¶ 18} In *Johnson,* the Eighth District concluded that the trial court erred by compelling the disclosure of reports in toto without conducting an in camera inspection of the records. Thus, the *Johnson* court reversed the trial court's decision and remanded the case for an in camera inspection.

{¶ 19} The Eighth District's remand for an in camera inspection is yet another indication of the statute's intended scope. If the peer review statute was truly unlimited in scope, as the hospital avers, there would be absolutely no basis for the requisite in camera inspection, as the entire file would be privileged irrespective of its contents.

{¶ 20} The Ohio Supreme Court has stated, "The purposes of R.C. 2305.25 are clear. The statute extends limited protection to those who provide information to certain review boards and committees to encourage the free flow of information without ·threat of reprisal in the form of civil liability. See, generally, *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609. The statute also seeks to protect those serving on committees and committee employees for the obvious reason that it could be difficult to staff a committee absent such protections." *Browning v. Burt* (1993), 66 Ohio St.3d 544, 562, 613 N.E.2d 993. The court qualified these statements, however, explaining that "R.C. 2305.25 does not provide blanket immunity to a hospital for negligence in granting and/or continuing staff privileges of an incompetent physician." Id. at 562, 613 N.E.2d 993.

{¶ 21} The Second District made a similar finding regarding the nature and purpose of maintaining the secrecy of the peer review process in *Phillips v. Burt* (June 14, 1995), 2d Dist. No. 14532, 1995 WL 353861. The *Phillips* court opined, "Although we do not expressly limit it to such actions, the better view of the statute indicates that the legislature meant to provide immunity to peer review participants against a civil action brought by a physician whose credentials were declined or revoked; i.e., a defamation or business tort claim." Id. at 11.

{¶ 22} We agree that the peer review statute was designed to protect the thoughts and actions taken by peer review committees. However, needlessly hampering the discovery of materials upon which a committee bases its decision to hire or retain a particular physician does nothing to further the underlying purpose of the statute. In fact, it frustrates its goal.

{¶ 23}  In *McCarthy v. W. Res. Care Sys.* (June 11, 1999), 7th Dist. No. 97 C.A. 76, 1999 WL 420578, this court explained, "The purpose of peer review and quality assurance is to allow independent third parties to review both the individual and team performance of health care providers in an effort to improve the overall quality of health care."  Id. at 4. However, if all materials viewed and utilized by peer review committees were deemed undiscoverable, a hospital could never be held accountable for its choice in staffing by truly independent third parties.

{¶ 24}  This is precisely why courts continue to recognize the tort of negligent credentialing: so that hospitals may be held accountable by third parties for the breach of their duty to hire only competent physicians.  In *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus, the court discussed the claim of negligent credentialing as follows:

{¶ 25}  "[A] hospital has a direct duty to grant and to continue such privileges only to competent physicians.  A hospital is not an insurer of the skills of private physicians to whom staff privileges have been granted.  In order to recover for a breach of this duty, a plaintiff injured by the negligence of a staff physician must demonstrate that but for the lack of care in the selection or the retention of the physician, the physician would not have been granted staff privileges, and the plaintiff would not have been injured."

{¶ 26}  In order to meet this burden, a party must be able to demonstrate what information was gathered by a hospital with respect to the selection or retention of a physician.  If we were to give R.C. 2305.251 the narrow reading suggested by the hospital, parties could no longer meaningfully challenge the hiring choices made by their health care providers.  Because there appears to be no other reasonable alternative means for discovering the basis of a peer review committee's decision to credential a physician, hospitals would be left to self-police their own actions if these materials were undiscoverable.

{¶ 27}  Similarly, many of the materials examined by a peer review committee must be made accessible for there to be a meaningful challenge of their hiring choice.  Although we agree that the peer review statute protects many of the documents utilized by a peer review committee, there are clearly materials that are discoverable under the statute.  Thus, we find that the hospital's request to protect *the entire file* based upon R.C. 2305.251 to be meritless.

{¶ 28}  We find that the hospital's alternative contention that the peer review file is undiscoverable pursuant to the Health Care Quality Improvement Act, Section 11101 et seq., Title 42, U.S.Code, to be unpersuasive.  One of the main purposes of HCQIA was "to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are

incompetent or who engage in unprofessional behavior." H.R.Rep. No. 903, 99th Cong., 2d Sess. 2, reprinted in 1986 U.S.C.C.A.N. 6287, 6384, 6384. Under HCQIA, those who take action in professional review committees which adversely affects a doctor's clinical privileges are protected from suit under both state and federal law so long as the action is taken in accordance with statutory standards. See *Gureasko v. Bethesda Hosp.* (1996), 116 Ohio App.3d 724, 689 N.E.2d 76.

{¶ 29} The hospital explains that the HCQIA serves as a national repository for information about a physician's past performance. A hospital may request information regarding a doctor as it proceeds through the hiring or reviewing process. The hospital concedes that the information provided to the repository remains confidential *unless state law permits disclosure.* Therefore, R.C. 2305.251 controls.

{¶ 30} As we have determined that R.C. 2305.251 does not create an absolute privilege, we must now determine what items from the peer review file deserve the protection of the statute. The trial court opted to disclose the *entire* credentialing file. Evid.R. 104(A) gives the trial judge discretion to determine the admissibility of evidence. *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 10 O.O.3d 332, 383 N.E.2d 564. This court shall not disturb the trial court's decision regarding the admissibility of evidence unless we find that the trial court clearly abused its discretion. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875.

{¶ 31} In *Gates,* the court found that the following records were protected from discovery by R.C. 2305.251:

{¶ 32} "(1) Any records or transcript of proceedings of a review committee defined in R.C. 2305.25 which considered the conduct of the defendant;

{¶ 33} "(2) Any evidence produced or presented at such proceedings, unless said evidence (information, documents or records) became available to the subpoenaed witness (in this case, Mr. Turner) in any other capacity besides as a member of said committee;

{¶ 34} "(3) Any finding, recommendation, evaluation, opinion, or other action of said committee." Id., 2 Ohio App.3d at 351, 2 OBR 392, 442 N.E.2d 72.

{¶ 35} In the instant case, the trial court made no distinction between documents that could be obtained from their original sources and documents that were generated by the review committee. It appears from reviewing the credentialing file that there are several documents that should be kept confiden-

tial. There are also several others that would undoubtedly be obtainable from their original sources. Therefore, we find that the hospital's contention that the file in its entirety is undiscoverable under R.C. 2305.251 is meritless to the extent that there are some discoverable documents in the file.

{¶ 36} Consequently, appellant's sole assignment of error is meritorious as we conclude that the trial court abused its discretion by disclosing the credentialing file in its entirety. We reverse the judgment of the trial court and remand this cause so that it may comply with the mandates of R.C. 2305.251.

Judgment reversed
and cause remanded.

VUKOVICH, P.J., and WAITE, J., concur.