TRANGLE et al., Appellees,

v.

ROJAS et al. Appellants.

[Cite as *Trangle v. Rojas,* 150 Ohio App.3d 549, 2002-Ohio-6510.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81190.

Decided Nov. 27, 2002.

Spangenberg, Shibley & Liber, L.L.P., Peter H. Weinberger and Stuart E. Scott, for appellees.

Bonezzi, Switzer, Murphy & Polito, John S. Polito, Steven J. Hupp and Patrick J. Quallich, for appellants Cesar Rojas, M.D., and Kim, Collis & Associates.

Moscarino & Treu, L.L.P., Thomas H. Allison, Michael L. Golding and Edward S. Jerse, for Lutheran Hospital.

COLLEEN CONWAY COONEY, Judge.

{¶ 1}  Defendant-appellant Lutheran Hospital ("Lutheran") appeals from the trial court's order compelling Lutheran to provide full and complete responses to a broad set of discovery requests that it claims are privileged by statute.  For the reasons below, the trial court's judgment is reversed, and the case is remanded with instructions that the trial court conduct an in-camera inspection of the documents requested.

{¶ 2}  Plaintiffs-appellees Kevin L. Trangle, M.D., and Betty Trangle ("the Trangles") filed this medical malpractice action against Cesar Rojas, M.D. ("Rojas"), Kim, Collis & Associates, Inc. ("KCA"), and Lutheran Hospital.  In their complaint, the Trangles allege that Dr. Rojas negligently performed a cervical paraspinal nerve block on Kevin Trangle that left him paralyzed.

{¶ 3}  On July 10, 2001, the Trangles propounded a second set of interrogatories and request for production of documents to Lutheran seeking information on a potential negligent credentialing claim because they learned that Rojas had been convicted of drug trafficking in March 2001.  Lutheran objected to these requests, stating that they were vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.  Lutheran also objected, asserting the "peer review" privilege.  Among the requests for production were the following:

{¶ 4}  "3. Copies of any and all communications received by Lutheran Hospital or its predecessors, from other healthcare institutions, universities, colleges, licensing boards, individuals or other entities regarding the Defendant, Cesar Rojas, M.D.

{¶ 5}  "4. Copies of any administrative files or personnel files maintained by Lutheran Hospital with respect to the Defendant, Cesar Rojas, M.D.

{¶ 6}  "5. Copies of any and all releases of information provided by the Defendant, Cesar Rojas, M.D. to Lutheran Hospital authorizing Lutheran Hospital to obtain documents regarding his education, training, or other matters."

{¶ 7}  Among the interrogatories were the following:

{¶ 8}  "2. Please identify the name or names of individuals who participated in the appointment process of Defendant Cesar Rojas, M.D. to the medical staff of Lutheran Hospital."

{¶ 9}  "6. Describe, in detail, any type of investigation or inquiry performed by Lutheran Hospital to obtain verification of Defendant, Cesar Rojas, M.D.'s education, medical training, and continuing education and identify the names of those individuals who performed or participated in this investigation."

{¶ 10}  "10.  Identify the name, address and position with Lutheran Hospital those individuals who participated in the investigation and review process of Cesar Rojas M.D.'s application for staff privileges at Lutheran Hospital.

{¶ 11}  "11.  State the name of any committee or committees who were responsible for conducting investigation and review of Cesar Rojas, M.D.'s application for staff privileges at Lutheran Hospital and any subsequent renewal applications for staff privileges.

{¶ 12}  "a. State the dates on which the above-named committee(s) met with regard to reviewing Cesar Rojas, M.D.'s application and/or renewal for staff privileges."

{¶ 13}  The Trangles obtained leave of court to amend their complaint to add a claim for negligent credentialing against Lutheran.  On September 18, 2001, they filed an amended complaint asserting that Lutheran "was negligent in failing

to exercise due care in the selection of Defendant, Cesar Rojas, M.D. and in granting him medical privileges."

{¶ 14} On December 3, 2001, the Trangles moved to compel Lutheran to "provide sufficient and complete responses" to their second set of discovery requests. Lutheran opposed the motion, arguing that the information sought was protected by the peer review privilege and thus nondiscoverable. The Trangles argued in response that the peer review privilege attaches only to documents, testimony, and opinions "produced or created" by a credentialing committee. On March 21, 2002, without conducting a hearing or an in-camera inspection, the trial court issued the following order:

{¶ 15} "Plaintiffs' motion to compel filed 12/03/2001 is granted in its entirety. Defendant Lutheran Hospital is hereby ordered to provide complete responses to plaintiffs' Second Set of Interrogatories and Request for Production of Documents within thirty days of the date of journalization of this order."

{¶ 16} Lutheran appeals, advancing the following assignment of error:

{¶ 17} "The trial court abused its discretion in ordering Lutheran Hospital 'to provide complete responses to plaintiff's Second Set of Interrogatories and Request for Production of Documents' because the documents and responses sought are protected from discovery by Ohio's Peer Review Statutes, R.C. 2305.24 through 2305.251, and, further, the discovery requests are irrelevant and otherwise objectionable."

{¶ 18} As a preliminary matter, although Rojas and KCA have filed an appellate brief, they do not have standing to assert their interests in this appeal. The discovery at issue was not propounded to them but rather to Lutheran. Moreover, neither Rojas nor KCA is entitled to assert the peer review privilege claimed by Lutheran because, pursuant to R.C. 2305.24, Lutheran's quality assurance committee is the holder of the peer review privilege.

{¶ 19} An appellate court reviews any claimed error relating to a discovery matter under an abuse-of-discretion standard. *Lightbody v. Rust* (2000), 137 Ohio App.3d 658, 663, 739 N.E.2d 840. An abuse of discretion means more than an error of law or an error of judgment. It implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 20} The confidentiality of information furnished to quality assurance and utilization review committees of health care facilities is governed by statute. R.C. 2305.24 provides that "[a]ny information, data reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * shall be confidential." Further, R.C. 2305.251 provides:

{¶ 21} "Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, a hospital, * * * arising out of matters that are the subject of evaluation and review by the review committee. No person in attendance at a meeting of a review committee or serving as a member of a review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee."

{¶ 22} The privilege granted by R.C. 2305.24, 2305.25, and 2305.251 is not absolute. R.C. 2305.251 provides the following exception to this privilege of confidentiality:

{¶ 23} "Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were presented during proceedings of a committee nor should any person testifying before a committee or who is a member of the committee be prevented from testifying as to matters within the person's knowledge, but the witness cannot be asked about the witness' testimony before the committee or opinion formed by the witness as a result of a committee hearing."

{¶ 24} Lutheran argues that the peer review privilege is not limited to materials "produced or created" by a credentialing committee but rather extends to information and documents submitted to the peer review committee from outside sources. The Trangles argue that all information and documents that are presented to a hospital's credentialing committee that come from outside sources are discoverable.

{¶ 25} In *Kalb v. Morehead* (May 19, 1998), 4th Dist No. 97 CA 2499, 1998 WL 254028, the court applied the plain language of the statute and concluded that the privilege does not extend to records or information otherwise available from original sources. The *Kalb* court concluded that if a defendant's personnel file contained records generated and available from other original sources, they would be discoverable. Id.

{¶ 26} The Ohio Supreme Court has stated: "The purposes of R.C. 2305.25 are clear. The statute extends limited protection to those who provide information to certain review boards and committees to encourage the free flow of information without threat of reprisal in the form of civil liability. See *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 113, 573 N.E.2d 609, 612. The statute also seeks to protect those serving on committees and committee employees for the obvious reason that it could be difficult to staff a committee absent such protections."

*Browning v. Burt* (1993), 66 Ohio St.3d 544, 562, 613 N.E.2d 993. However, the court further explained that "R.C. 2305.25 does not provide blanket immunity to a hospital for negligence in granting and/or continuing staff privileges of an incompetent physician." Id. at 562, 613 N.E.2d 993.

{¶ 27} In *Wilson v. Barnesville Hosp.*, 7th Dist. No. 01 BA 40, 2002-Ohio-5186, 2002 WL 31163394, the court explained that to provide a blanket privilege to all documents contained in a credentialing file would frustrate the purpose behind the peer review statute. The court reasoned at ¶ 23–26:

{¶ 28} "In *McCarthy v. Western Reserve Care System* (June 11, 1999), 7th Dist. No. 97 C.A. 76 [1999 WL 420578], this Court explained, 'The purpose of peer review and quality assurance is to allow independent third parties to review both the individual and team performance of health care providers in an effort to improve the overall quality of health care.' Id. at 4. However, if all materials viewed and utilized by peer review committees were deemed undiscoverable, a hospital could never be held accountable for its choice in staffing by truly independent third parties.

{¶ 29} "This is precisely why courts continue to recognize the tort of negligent credentialing; so that hospitals may be held accountable by third parties for the breach of their duty to hire only competent physicians. In *Albain v. Flower Hospital* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph two of the syllabus, the court discussed the claim of negligent credentialing as follows:

{¶ 30} " '[A] hospital has a direct duty to grant and to continue such privileges only to competent physicians. A hospital is not an insurer of the skills of private physicians to whom staff privileges have been granted. In order to recover for a breach of this duty, a plaintiff injured by the negligence of a staff physician must demonstrate that but for the lack of care in the selection or retention of the physician, the physician would not have been granted staff privileges, and the plaintiff would not have been injured.' Id.

{¶ 31} "In order to meet this burden, a party must be able to demonstrate what information was gathered by a hospital with respect to the selection or retention of a physician. If we were to give R.C. 2305.251 the narrow reading suggested by the Hospital, parties could no longer meaningfully challenge the hiring choices made by their health care providers. Because there appears to be no other reasonable alternative means for discovering the basis of a peer review committee's decision to credential a physician, hospitals would be left to self-police their own actions if these materials were undiscoverable."

{¶ 32} Having determined that R.C. 2305.251 does not provide an absolute privilege, we must now determine what items are protected by the statute and what items should be produced. In *Gates v. Brewer* (1981), 2 Ohio App.3d 347, 2

OBR 392, 442 N.E.2d 72, the court reversed the trial court's decision to quash a subpoena duces tecum that requested all records concerning the physician's performance and ordered an in-camera inspection. In its decision, the *Gates* court found that the following records were protected from discovery by R.C. 2305.251:

{¶ 33} "(1) Any records or transcript of proceedings of a review committee defined in R.C. 2305.25 which considered the conduct of the defendant; (2) any evidence produced or presented at such proceedings unless said evidence (information, documents or records) became available to the subpoenaed witness (in this case, Mr. Turner) in any other capacity besides as a member of said committee; (3) any finding, recommendation, evaluation, opinion, or other action of said committee."

■ {¶ 34} Thus, any documents generated by the hospital for peer review purposes are privileged under the statute. As previously stated, any documents available from their original sources are discoverable from a hospital, in this case, Lutheran Hospital.

■ {¶ 35} The trial court in this case ordered Lutheran to provide complete responses to all of the Trangles' interrogatories and request for production of documents without regard to privileged materials. When a trial court is presented with a situation in which a party attempts to prevent the introduction of certain evidence by asserting the privilege defined in R.C. 2305.251, it is incumbent upon the trial court to hold an in-camera inspection of the information, documents, or records in question to determine the admissibility of the evidence in relation to R.C. 2305.251. *Gates v. Brewer*, 2 Ohio App.3d at 349, 2 OBR 392, 442 N.E.2d 72. The trial court should have conducted an in-camera inspection to determine which information, documents, or records were discoverable and which were privileged. Failure to conduct such an in-camera inspection constitutes an abuse of discretion.

{¶ 36} Lutheran also argues that the names of credentialing committee members are privileged under the statute. In interrogatories 2, 6, 10, and 11, the Trangles seek the identity of individuals who participated in the process of appointing Rojas or who investigated his qualifications and applications for staff privileges. R.C. 2305.251 expressly states that members of a review committee cannot be called to testify. R.C. 2305.251 provides as follows:

{¶ 37} "No person in attendance at a meeting of a review committee or serving as a member of a review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any finding, recom-

mendation, evaluation, opinion, or other action of the committee or a member thereof."

{¶ 38}  Therefore, because members of the review committees may not testify as to matters produced or presented during review committee proceedings, the identities of these individuals cannot lead to the discovery of admissible evidence.  Therefore, the Trangles' motion to compel such information should have been denied.  If the Trangles seek to depose any individuals who happen to be on the review committee for some other purpose, those individuals are not prohibited from testifying as to those other matters.

{¶ 39}  Finally, Lutheran argues that all discovery related to the hospital's credentialing committee is objectionable as irrelevant because the Trangles have failed to establish any basis for their claim of negligent credentialing.  Civ.R. 26(B)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  The scope of relevancy in discovery matters is within the broad discretion of the trial court.  *Baynard v. Oakwood Village* (Oct. 16, 1997), Cuyahoga App. 71711, 1997 WL 638807.  By arguing that none of the Trangles' discovery requests is relevant because the Trangles have failed to establish any basis for their negligent credentialing claim, Lutheran is in a sense arguing the merits of its case.  Such an argument is more properly suited for a dispositive motion filed with the trial court.  Moreover, the Trangles may be able to produce evidence substantiating their negligent credentialing claim after discovery has been completed.  Therefore, this argument is premature and not well taken.

{¶ 40}  Nonetheless, the trial court erred in ordering "complete" responses to the second set of interrogatories and request for production of documents without first conducting an in-camera inspection to determine the privileged matters.

{¶ 41}  The judgment of the trial court is reversed, and the cause is remanded for an in-camera inspection of the requested documents.

Judgment reversed
and cause remanded.

PATRICIA ANN BLACKMON, P.J., and ANN DYKE, J., concur.