[Cite as *Salameh v. Salameh*, 2019-Ohio-5390.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ANMAR SALAMEH | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 19 CAF 01 0008; |
| | : | Consolidated with 19 CAF 01 0009 |
| | : | |
| LINA SALAMEH | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Domestic Relations Division, Case No. 16 DR A 060316

JUDGMENT:      AFFIRMED IN PART; REVERSED AND REMANDED IN PART AS TO CHILD SUPPORT CALCULATION

DATE OF JUDGMENT ENTRY:      December 27, 2019

APPEARANCES:

For Plaintiff-Appellant:

OMAR TARAZI
5635 Sandbrook Lane
Hilliard, OH 43036

For Defendant-Appellee:

ROBERT BRACCO
1170 Old Henderson Rd.
Suite 109
Columbus, OH 43220

*Delaney, J.*

{¶1} Plaintiff-Appellant Anmar Salameh appeals the December 27, 2018 Final Judgment for Divorce and other judgment entries issued by the Delaware County Court of Common Pleas, Domestic Relations Division. Defendant/Third-Party Plaintiff-Appellee is Lina Salameh. Third-Party Defendant-Appellant is Bouchra Doumet.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Plaintiff-Appellant Anmar Salameh ("Husband") and Defendant/Third-Party Plaintiff-Appellee Lina Salameh ("Wife") were married in Syria on August 7, 2009 and in the United States on November 16, 2009. One child was born as issue of the marriage, G.S., born on June 28, 2011. There was no dispute Husband and Wife had a tumultuous relationship before the marriage and during the marriage.

{¶3} Husband and Wife are originally from Syria. Husband moved to the United States and obtained a master's degree in civil engineering. Husband was visiting his brother in Paris, France when he met Wife. Wife was living with her family and working as a physician. Husband and Wife became engaged after dating, but the family testified their relationship was strained from the beginning. Wife moved to the United States after the marriage but spoke limited English. Wife became employed at Nationwide Children's Hospital as a medical researcher while she attempted to get her license to practice medicine in the United States. Husband worked as a civil engineer, eventually opening his own engineering business named Valcon Consulting Group, LLC. Husband operated the business from the home and took care of G.S.

{¶4} On June 30, 2016, Husband filed a Complaint for Divorce with Children in the Delaware County Court of Common Pleas, Domestic Relations Division. Wife filed an

Answer, Counterclaim, and Third-Party Complaint against Third-Party Defendant Valcon Consulting Group, LLC.

{¶5} The trial court appointed a Guardian ad Litem for G.S. on September 23, 2016.

{¶6} Husband and Wife resided together at 10350 Widdington Close ("marital home") until December 27, 2016, when trial court issued a civil protection order against Husband. Husband vacated the marital home. Husband alleged he operated Valcon Consulting Group, LLC, out of the marital home, and Wife would not permit him access to retrieve items necessary for his business. Husband alleged Wife's refusal to permit him access affected Husband's business and earning capacity.

{¶7} On January 4, 2017, Wife filed a Motion to Add Third-Party Defendant Instanter. Wife moved to add Husband's sister, Third-Party Defendant-Appellant Bouchra Doumet ("Sister") as a third-party defendant due to Sister's possession of an alleged marital asset, the marital home of Husband and Wife. Sister was the record title owner of the marital home. Husband and Sister filed memorandums in opposition to the motion to add Sister as a third-party defendant. Sister moved to evict Wife from the marital home on January 27, 2017. Sister was restrained from evicting Wife from the marital home by temporary orders issued April 11, 2017.

{¶8} On February 1, 2017, the magistrate found the trial court had jurisdiction to determine whether the residence was a marital asset and whether Husband engaged in a fraudulent conveyance of said asset to Sister. It granted the motion to add Sister as a third-party defendant. The trial court further granted Wife leave to file an Amended Answer and Counterclaim.

{¶9}  Sister filed a complaint for eviction, declaratory judgment, and ejectment against Wife in the Delaware County Court of Common Pleas, General Division on April 6, 2017. The matter was stayed pending the resolution of the divorce proceedings.

{¶10} On October 5, 2017, Sister filed a counterclaim for declaratory judgment arguing she was the record title owner of the marital home. She brought claims for ejectment, trespass, and unjust enrichment. Sister stated that Husband and Wife transferred the marital home to Sister by General Warranty Deed. The marital home was then transferred from Sister to a limited liability company, BDMD, LLC, the sole member of which was a trust managed by Sister and her husband.

{¶11} Husband filed a shared parenting plan on December 29, 2017.

{¶12} The parties filed multiple motions for the trial court's consideration before the matter went to trial on January 17, 2018. The trial was held over a span of 18 days. Six attorneys and two certified court interpreters were present at the trial. The trial court heard the testimony of the parties, two economic experts, one vocational expert, various witnesses regarding the real estate, and witnesses regarding the Valcon Consulting Group, LLC. The parties submitted numerous binders filled with exhibits. On August 15, 2018, the trial court conducted an in camera interview with G.S.

{¶13}  On December 27, 2018, the trial court issued its 27-page Final Judgment for Divorce with Children and its judgment entry on the Amended Third-Party Complaint and Counterclaim. In summary, the trial court adopted the recommendations of the GAL and named Wife the residential parent and legal custodian of G.S. Based on Husband's income of $82,000, the trial court awarded Wife spousal support in the amount of $500 per month for 60 months. Husband was ordered to pay child support in the amount of

$742.08 per month. The trial court found the termination of the marriage was on December 27, 2016. The trial court determined the evidence demonstrated the marital home was marital property and Sister was unjustly enriched when Husband engaged in financial misconduct by transferring the home to Sister. The trial court voided the transfer of the marital home to Sister and ordered the marital home sold by a receiver. Upon the sale of the home, Husband was to pay Wife $80,000 for expense money as a portion of Wife's attorney and expert fees due to Husband's financial misconduct. The trial court determined Husband used $97,978 in separate funds to initially purchase the marital home, which the trial court found did not create a percentage interest but was only a "dollar for dollar" credit to Husband for his non-marital contribution.

{¶14} This matter is now before this Court for consideration of the trial court's decree filed December 27, 2018. The pertinent parts of the decision and any additional facts will be addressed under each of the corresponding Assignments of Error.

## ASSIGNMENTS OF ERROR

{¶15} Husband raises 11 Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND ITS FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE FUNDS TRANSFERRED BY ANMAR TO HIS FAMILY ARE MARITAL FUNDS AND DID NOT FIND MARITAL DEBTS OWED TO THEM, AND DID NOT FIND THE FUNDS LINA TRANSFERRED TO HER FAMILY TO BE MARITAL FUNDS.

{¶17} "II. TRIAL COURT ERRED AS A MATTER OF LAW AND ITS FINDS [SIC] WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN ITS FINDINGS

TOTALING $172,022 IN MARITAL ASSETS TRANSFERRED TO BOUCHRA AND ITS FINDINGS TOTALING $97,978 IN NON-MARITAL SEPARATE FUNDS OF ANMAR TRANSFERRED TO BOUCHRA.

{¶18} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW, ABUSED ITS DISCRETION, AND ITS FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT ANMAR ENGAGED IN FINANCIAL MISCONDUCT.

{¶19} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ORDERING THAT ANMAR'S NON-MARITAL FUNDS DO NOT CREATED A PERCENTAGE INTEREST TO HIM, BUT ONLY A CREDIT DOLLAR FOR DOLLAR AS THAT FAILS TO AWARD ANMAR FOR HIS PASSIVE INCOME GROWTH.

{¶20} "V. THE RTIAL COURT ABUSED ITS DISCRETION AND ITS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN AWARDING LINA $80,000 IN ATTORNEY AND EXPERT FEES DUE TO THE FINDING OF FINANCIAL MISCONDUCT ON THE PART OF ANMAR.

{¶21} "VI. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DENIED ANMAR DUE PROCESS OF LAW BY REFUSING TO RULE ON HIS MOTIONS TO ACCESS TO [SIC] THE MARITAL RESIDENCE TO RETRIEVE EVIDENCE AND WORK MATERIALS, AND BY FAILING TO ACCOUNT FOR HIS LOSS OF INCOME AND DAMAGE TO HIS BUSINESS RESULTING FROM LINA WITHHOLDING WORK MATERIALS.

{¶22} "VII. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO FIND AND DIVIDE OR EQUITABLY ACCOUNT FOR

THE MARITAL DEBT OF $36,750 OWED TO ANMAR'S FORMER BUSINESS PARTNER.

{¶23} "VIII. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN AWARDING SPOUSAL SUPORT AND IN ORDERING 60 MONTHS OF SPOUSAL SUPPORT; AND ITS FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE PARTIES' INCOMES WERE ABOUT EQUAL FOR PURPOSES OF SPOUSAL SUPPORT DETERMINATION, AND FAILED TO CREDIT ANMAR FOR HIS OVERPAYMENT OF MONEY IN LIEU OF SUPPORT AFTER THE MARRIAGE AND DATE.

{¶24} "IX. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN CALCULATING THE CHILD SUPPORT.

{¶25} "X. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION, AND ITS FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING ANMAR IN CONTEMPT OF COURT, ORDERING HIM TO PAY $2,369.98 PLUS $1,000 IN EXPENSE MONEY AND FAILING TO CONSIDER OR RULE ON HIS SUPPLEMENTAL MOTION FOR CONTEMPT OR FACTOR IN THE ADDITIONAL COST HE INCURRED DUE TO LINA'S CHANGE OF HEALTH INSURANCE PLAN AGAINST COURT ORDERS.

{¶26} "XII. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ALLOCATIONG PARENTAL RIGHTS AND RESPONSIBILITIES."

## ANALYSIS

### I., II., IV., and VII.

{¶27} We consider Husband's first, second, fourth, and seventh Assignments of Error together because they argue the trial court erred as to its determination of marital and separate property.

### Standard of Review

{¶28} R.C. 3105.171(B) states in pertinent part that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest." There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise. *Haven v Haven*, 5th Dist. Ashland No. 12-COA-013, 2012-Ohio-5347, ¶ 23. Correspondingly, the definition of "separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" R.C. 3105.171(A)(6)(a)(ii).

{¶29} The characterization of property as marital or separate must be supported by sufficient, credible evidence. *Kess v. Kess*, 5th Dist. Delaware No. 15 CAF 10 0076, 2018-Ohio-1370, 2018 WL 1750932, ¶ 51 citing *Chase–Carey v. Carey*, 5th Dist. Coshocton No. 99CA1, 1999 WL 770172. The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital

property, has the burden of proof by a preponderance of the evidence. *Passyalia v. Moneir*, 5th Dist. Stark No. 2016 CA 00182, 2017–Ohio–7033, ¶ 18 citing *Cooper v. Cooper,* 5th Dist. Licking No. 14 CA 100, 2015–Ohio–4048, ¶ 45, citing *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 614, 709 N.E.2d 208 (1998).

{¶30} We also note R.C. 3105.171(C)(1) states in pertinent part as follows: "Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. * * *." *Pletcher v. Pletcher*, 5th Dist. Muskingum No. CT2019-0002, 2019-Ohio-3625, 2019 WL 4267781, ¶ 18. In order to make an equitable division of property, the trial court should first determine the value of the marital assets. *Passyalia v. Moneir*, 5th Dist. No. 2016 CA 00182, 2017-Ohio-7033, 95 N.E.3d 723, 2017 WL 3263785, ¶ 10 citing *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 152, 493 N.E.2d 975. In performing this function, the trial court has broad discretion to develop some measure of value. *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, "[t]he valuation of marital assets is typically a factual issue that is left to the discretion of the trial court." *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, 2008 WL 5049808, ¶ 18, citing *Berish, supra*.

{¶31} Trial court decisions regarding the classification of separate and marital property are not reversed unless there is a showing of an abuse of discretion. *Pletcher v. Pletcher*, 5th Dist. Muskingum No. CT2019-0002, 2019-Ohio-3625, 2019 WL 4267781, ¶ 15 citing *Valentine v. Valentine*, 5th Dist. Ashland No. 95COA01120, 1996 WL 72608, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). In order

to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). While the characterization of property as separate or marital must be supported by sufficient, credible evidence, the appellate court is not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. This Court has consistently held that it cannot substitute its judgment for that of the trial court, and the Supreme Court has directed us not to conduct piece meal appeals of property divisions, but rather to look to the total distribution to determine whether it is equitable. *Haynes v. Haynes*, 5th Dist. Coshocton No. 2010-CA-01, 2010-Ohio-5801, 2010 WL 4868078, ¶ 38 citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984); *Hostetler v. Hostetler*, 5th Dist. Stark Nos. 2018CA00052, 2018CA00054, 2019-Ohio-609, ¶ 19.

{¶32} Pursuant to the above standard of review, we consider the trial court's determination of marital and separate property.

### Husband's Transfers of Funds to His Family

{¶33} Husband contends in his first Assignment of Error that the trial court erred when it determined that monies Husband gave to his family during the marriage were marital funds and not marital debts owed to his family. Husband further contends the trial court did not find the funds Wife transferred to her family during the marriage were marital funds. In his second Assignment of Error, Husband argued the trial court erred when it

awarded Husband $97,978 as separate property in relation to the purchase of the marital home.

{¶34} Husband has a brother, Bachar, and two sisters, Bouchra and Ritta. At the time of the trial, Husband's parents were living in Syria. Sister and her husband reside in Toledo, Ohio. Bachar lives in Paris, France. Ritta lives with her parents in Syria. The siblings testified at the trial and spoke of a close and supportive relationship, both emotionally and financially. The evidence presented at trial showed numerous transfers of money between Husband and his family before and during Husband and Wife's marriage in relation to property purchases.

### Apartment Building in Syria

{¶35} In 2003, Bachar and Husband jointly purchased a plot of land in Marmarita, Syria to build a four-story apartment building for the family. Construction started in 2008 and was finished in 2009. In November 2011, Bachar paid $400,000 for the construction of the building on behalf of himself and Husband. In 2011, Husband paid Bachar $50,000. Husband testified the $50,000 came from the equity of his home purchased in 2005 located in Powell, Ohio. In 2013, Husband paid Sister $130,000 and $40,000 in two separate transactions with the understanding that she was to give money to Bachar. Sister deposited the $130,000 into her money market account. Also, in 2013, Husband paid Bachar $20,000. Because of the war in Syria, the value of the apartment building decreased to $40,000.

### Marital Home

{¶36} On February 28, 2014, Husband and Wife closed on a property located at 10350 Widdington Close ("marital home"). The marital home was a foreclosure and listed

on a short sale for $650,000. At the time of the purchase, Husband stated he could not obtain financing because he had lost his job with Beaver Excavating as a civil engineer. Husband claimed that he and Sister, with advice from his real estate broker, agreed that Sister would purchase the marital home as an investment property. Sister wanted to purchase the house outright, but because of the short sale, the real estate broker recommended the marital home be purchased in the name of Husband and Wife. Husband and Wife could then transfer the marital home to Sister. Husband testified that he, Wife, and Sister reached an oral agreement regarding the transfer to Sister. Wife denied agreeing with the transfer to Sister.

{¶37} The contract price of the marital home was $350,000, which was then reduced by a real estate tax credit from sellers for the purchase amount of $346,557.95. Husband paid $46,558 at closing. He stated $37,279 were his separate funds from the sale of his pre-marital home and $7,279 was marital funds. Sister paid $300,000. The account from which Sister withdrew the $300,000 to pay for the marital home was also the account that she deposited the $130,000 from Husband that she was to pay Bachar on behalf of Husband.

{¶38} After closing, Husband and Wife transferred title and ownership of the marital home to Sister for no consideration. Sister transferred her ownership of the marital home to a limited liability company, BDMD, LLC, the sole member of which is a trust managed by Sister and her husband.

{¶39} While Sister was the owner of the marital home, the parties did not enter into a lease agreement for Husband and Wife's use of the marital home. Husband and Wife did not pay Sister rent while they resided together in the marital home. In 2014 and

2015, Husband transferred $50,000 (totaling $100,000) to Sister. Husband claimed the payments were in lieu of rent and for the benefit of his parents, while Sister claimed the payments were made for love and affection.

{¶40} After closing, Husband executed an affidavit saying he and Wife were the owners of the marital home for purposes of applying for a real estate tax reduction. Husband and Wife received a tax rebate of $15,695.00, which was kept by Husband. Sister stated Husband kept the rebate to reimburse him for the $46,558 down payment on the marital home. Husband and Wife paid the real estate taxes on the home. Husband and Wife paid for the renovations on the marital home.

<u>Trial Court's Determination of Marital and Separate Property</u>

{¶41} In the trial court's Final Judgment for Divorce with Children, it held as to determination of marital and separate property:

The second major area of dispute the undersigned has to determine is what is separate property versus marital property. Husband's financial conduct in transferring funds to his sister Bouchra, Third-Party Defendant, at various times has muddled the tracing required. The two siblings (Anmar and Bouchra) have "defined" different transfers of funds without supporting documentation for these definitions except for checks. For example, the September 2013 transfer of $130,000 from Anmar and Bouchra was claimed to be for their brother, Bachar, who now lives in Paris, France as part of Anmar's contribution to the four family apartment building constructed in Marmarita, Syria started in 2004. Bachar initially made 100% of the financial contribution. Anmar claimed the $130,000 was partial

reimbursement for Anmar's portion, but was held by Bouchra and not segregated. Bouchra and her spouse were (or have) to receive one of the four apartments without financial contribution. This is based upon Syrian cultural norms of sons providing their parents (and female siblings) with a home. Anmar was to receive the top floor apartment (unfurnished), Bachar one apartment, and their parents and sister the fourth apartment. The latter is on the ground floor and currently occupied by the parents and sister. Anmar values his unfinished unit at $40,000 with $16,297.00 agreed by him to be marital. Anmar paid Bachar $50,000.00 on November 14, 2011 but the political situation in Syria (civil war/terrorism) has lowered the value.

(Dec. 27, 2018 Final Judgment).

{¶42} The trial court divided the Syrian apartment building between Husband and Wife as follows:

Plaintiff shall have the following items of real estate and personal property, free and clear from all claims of the Defendant, * * * (3) interest in apartment building Marmarita, Syria valued by Plaintiff at $40,000.00 with $16,297.00 marital; * * * Plaintiff is awarded the following separate property: * * * (2) separate interest in Marmarita, Syria condo $23,703.00 ($40,000.00 - $16,297.00);

(Dec. 27, 2018 Final Judgment).

{¶43} The trial resolved the issue of the marital home in a separate entry, the judgment entry ruling on the Amended Third-Party Complaint and Counterclaim issued on December 27, 2018. The trial court stated, "[w]hen you couple the marital relationship,

cultural practices, transfer of monies from Plaintiff to Third-Party Defendant, then back to Plaintiff and Defendant without segregation OR demarcation as to ownership, and the differing definitions of the funds * * *, a trier of **fact** (emphasis added) faces a muddled situation." The trial court ultimately found when the property was initially deeded into the joint ownership of Husband and Wife, at that point the marital home was marital property. It found by clear and convincing evidence that Sister was unjustly enriched by the execution and delivery of the deed from Husband and Wife without adequate consideration. The unjust enrichment was a direct result of Husband's financial misconduct in the marital relationship.

{¶44} The trial court found that based on the evidence presented, Husband was awarded $97,978 in separate property. The trial court found that figure based on the $170,000 transferred from Husband to Sister ($130,000 plus $40,000), where the evidence demonstrated that $97,978 ($91,959 of the $130,000 and $6,019 of the $40,000) was shown to be Husband's separate property. The trial court found that $72,022 ($170,000 minus $97,978) and the $100,000 transferred from Husband to Sister were marital funds.

{¶45} The trial court finally found as to "Other Orders regarding transfers alleged as dissipated/secreted funds:"

> It was not proven by a preponderance of the evidence that any funds remained in the possession or control of either party. Some of the funds were used by both parties for overseas travel, money for parents [sic] benefit, living expenses and possibly fertility-issue related. No orders will issue based on the evidence before the undersigned.

(Dec. 27, 2018 Final Judgment).

Husband's Arguments

{¶46} Husband first contends the trial court incorrectly determined the designation of some of the monies as marital assets, rather than marital debt. Specifically, Husband argues the payment of funds to Bachar in relation to the Syrian apartment building were payments towards a marital debt owed to his brother. The evidence at the hearing showed Husband and his brother entered into the joint agreement for the apartment building before the marriage. Construction of the apartment building began around the time of the marriage. Husband made payments to his brother during the marriage.

{¶47} "Marital debt" is "debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Cross v. Cross*, 8th Dist. No. 102627, 2015-Ohio-5255, 54 N.E.3d 756, 2015 WL 9239486, ¶ 30 quoting *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001CO60, 2003-Ohio-2559, 2003 WL 21134713, ¶ 47, citing Turner, *Equitable Division of Property*, Section 6.29, 455 (2d Ed.1994, Supp.2002). Debt that is not for the joint benefit of the parties is considered nonmarital and "equity generally requires that the burden of nonmarital debts be placed upon the party responsible for them." *Id.* quoting *Minges v. Minges*, 12th Dist. Butler No. CA87–06–085, 1988 WL 25913 (Feb. 29, 1988). The facts in this case showed Husband and his brother entered into the agreement to construct the apartment building before the marriage. The trial court found the apartment building was separate property but partially paid for using marital funds. Based on the evidence presented, the trial court awarded Husband the apartment building valued at $40,000 less $16,297 of the marital funds. Husband does not contest the valuation of the apartment building. We find the record supports the trial court's finding as

to the apartment building as separate property and did not abuse its discretion in awarding the same to Husband, less the marital funds used to pay for the apartment building.

{¶48} Husband next argues the trial court failed to address the marital funds allegedly dissipated by Wife. Husband contends the evidence demonstrated Wife absconded with $146,403 in marital funds. He states the trial court should have found those funds to be marital property. In its judgment entry, the trial court considered Husband's argument and determined Husband did not meet his burden to show by the preponderance of the evidence that Wife was in possession of the funds for personal use. We cannot say the trial court erred in so deciding.

{¶49} Finally, Husband contends the trial court failed to award Husband the correct amount of separate funds as to the marital home. He contends the trial court should have awarded him $184,517 as separate funds, which is $97,978 plus $39,279 of the $46,558 paid at closing plus $47,260 of the $50,000 Husband transferred to Sister for his parents' benefit. He contends this amount was supported by the testimony of his forensic accountant, Jeff Covert.

{¶50} The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact. *Thompson v. Myers*, 5th Dist. Tuscarawas No. 2018 AP 11 0036, 2019-Ohio-2299, 2019 WL 2442322, ¶ 46 citing *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), certiorari denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415 674 N.E.2d 1159 (1997).

{¶51} In this case, the trial court found the weight of the evidence demonstrated that Husband was entitled to $97,978 as separate funds for the marital home. The trial court did not find Husband credible as to the sources of the funds and the reasons for paying such funds to his Sister. As the trial court stated, the matter was muddled based on the frequent transfers of money between Husband, Sister, and his brother, the Sister's commingling of funds intended for her, brother, and parents, and tumultuous relationship between Husband and Wife. We cannot say the evidence in this case does not support the trial court's findings as to the determination of marital and separate property.

{¶52} Husband's first and second Assignments of Error are overruled.

### Percentage versus Dollar-For-Dollar Credit

{¶53} Husband contends in his fourth Assignment of Error that the trial court abused its discretion and erred as a matter of law when it failed to give Husband a percentage ownership in the marital property. The trial court stated in the December 27, 2018 Judgment Entry on the Amended Third-Party Complaint and Counterclaim:

> The real estate was marital property and any contribution of non-marital funds by Plaintiff, e.g. $97,978.00, does not create a percentage interest to him but only is a credit "dollar for dollar" to the Plaintiff for his non-marital contribution.

{¶54} Husband claims this finding is in contravention of R.C. 3105.171(A)(6)(a)(iii), which states that separate property is "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

{¶55} In his appellate brief, Husband does not point this Court to the record where he presented evidence of his passive income growth or loss in relation to his premarital contribution to the purchase of the marital home. In his reply brief, Husband states that "he did argue for return on investment or passive growth when his accountant traced Anmar's separate non-marital fund." App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶56} The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Brown v. Brown*, 5th Dist. Licking No. 2008 CA 0111, 2009-Ohio-4913, 2009 WL 2986191, ¶ 20 citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. When either spouse makes a contribution, whether it is monetary, due to labor, or in-kind, that causes an increase in the value of separate property, the increase in the value is active appreciation and deemed marital property. *Id.* citing *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 400, 696 N.E.2d 575 (1998). However, appreciation as a result of an increase in the fair market value of separate property due to its location or inflation is considered passive income. *Munroe v. Munroe*, 119 Ohio App.3d 530, 536, 695 N.E.2d 1155 (8th Dist.1997).

{¶57} In *Munroe*, the Eighth District used a mathematical formula to apportion the amount of appreciation in the property which was traceable to the husband's separate property in the form of the down payment he made on the property prior to the marriage. This Court has held that if the party with the burden to trace their separate property

presents no evidence that any of the appreciation is passive, the formula used by the court in *Munroe* cannot be applied. *Brown v. Brown*, 5th Dist. Licking No. 2008 CA 0111, 2009-Ohio-4913, 2009 WL 2986191, ¶¶ 28-29.

{¶58} By finding that Husband was not entitled to passive income, the trial court found that Husband did not meet his burden. Based on this record and the muddled transfers of funds between Husband and his family, we cannot say the trial court abused its discretion in determining Husband did not meet his burden and awarded Husband a dollar for dollar credit in the value of the marital home. Husband's fourth Assignment of Error is overruled.

**Husband's Debt to Former Business Partner**

{¶59} Husband contends in his seventh Assignment of Error that the trial court abused its discretion when it did not find or account for a debt Husband owed to his former business partner in the amount of $36,750. At trial, Husband testified his former business partner quit their engineering firm and in December 2015, the former partner invoiced Husband $36,750, which Husband submitted as an exhibit at trial. Husband contends this was a marital debt and the trial court failed to account for the debt in making an equitable division of assets and liabilities.

{¶60} The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact. *Thompson v. Myers*, 5th Dist. Tuscarawas No. 2018 AP 11 0036, 2019-Ohio-2299, 2019 WL 2442322, ¶ 46 citing *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), certiorari denied, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."

*Davis v. Flickinger*, 77 Ohio St.3d 415 674 N.E.2d 1159 (1997). While the characterization of property as separate or marital must be supported by sufficient, credible evidence, the appellate court is not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. This Court has consistently held that it cannot substitute its judgment for that of the trial court, and the Supreme Court has directed us not to conduct piece meal appeals of property divisions, but rather to look to the total distribution to determine whether it is equitable. *Haynes v. Haynes*, 5th Dist. Coshocton No. 2010-CA-01, 2010-Ohio-5801, 2010 WL 4868078, ¶ 38 citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 459 N.E.2d 896 (1984); *Hostetler v. Hostetler*, 5th Dist. Stark Nos. 2018CA00052, 2018CA00054, 2019-Ohio-609, ¶ 19.

{¶61} Our review does not permit piece meal appeals of property divisions. We look to the total distribution to determine whether it is equitable. In this case, we find the matter of the former business partner's invoice was submitted to the trial court and the trial court's determination of separate and marital assets/debts is equitable.

{¶62} Husband's seventh Assignment of Error is overruled.

**III**.

{¶63} Husband contends in his third Assignment of Error that the trial court's finding that he committed financial misconduct is against the manifest weight of the evidence. We disagree.

{¶64} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶ 19.

{¶65} We note a determination on financial misconduct rests on the facts and circumstances of each case. *Orwick v. Orwick*, 7th Dist. Jefferson No. 04 JE 14, 2005–Ohio–5055. As such, the trier of fact is given the duty to determine the credibility of each party's assertions in determining financial misconduct. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶66} R.C. 3105.171 governs division of marital property. Subsection (E)(4) states: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets,

the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶67} As stated by this court in *Kilpatrick v. Kilpatrick*, 5th Dist. Delaware No. 10 CAF 09 0080, 2011–Ohio–443, ¶ 29–30:

> The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence. *Boggs v. Boggs*, Delaware App. No. 07 CAF 02, 2008–Ohio–1411 at paragraph 73, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 615 N.E.2d 247.
>
> Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Bucalo v. Bucalo*, Medina App. No. 05CA0011–M, 2005–Ohio–6319. The burden of proving financial misconduct is on the complaining party. *Gallo v. Gallo*, 2002–Ohio–2815, Lake App. No.2000–L–208.

{¶68} As found by this court in *Shalash v. Shalash*, 5th Dist. Delaware No. 12 CAF 11 0079, 2013–Ohio–5064, ¶ 24:

> To find financial misconduct, a court must look to the reasons behind the questioned activity or the results of the activity and determine whether the wrongdoer profited from the activity or intentionally dissipated, destroyed, concealed, or fraudulently disposed of the other spouse's assets. *Thomas v. Thomas*, 2012–Ohio–2893, 974 Ohio App.3d 679, ¶ 63 (5th Dist.).

{¶69} The trial court found Husband engaged in financial misconduct in relation to the purchase of the marital home by Sister. The trial court found:

The undersigned does also find by clear and convincing evidence that the Third-Party Defendant has been unjustly enriched by virtue of the execution and delivery of the Deed from Plaintiff and Defendant to her without adequate consideration. The Court also finds that the foregoing unjust enrichment is directly a result of Plaintiff's financial misconduct in the marital relationship. He took advantage of the Defendant's English language shortcomings, her lack of familiarity with legal real estate issues, her near exclusion from ongoing involvement in the transaction as evidenced by all emails with the Realtor being with Plaintiff, and transfer of $170,000 ($130,000.00 plus $40,000.00) to Third-Party Defendant prior to the closing and the transfer of $100,000.00 in two $50,000.00 payments subsequent to the closing.

(Dec. 27, 2018 Judgment Entry).

{¶70} The trial court found the evidence in this case demonstrated that Husband, working with Sister, interfered with Wife's property rights in the marital home and marital assets. It is undisputed that Husband transferred a significant amount of marital assets to Sister before and after the purchase of the marital home. Evidence was presented that at the time the real estate purchase was in process, Wife did not agree with Sister's involvement in the purchase of the home. In the December 27, 2018 Judgment Entry, the trial court cited an email from Husband to his realtor presented as evidence. In the email, Husband asks the realtor to speak to Wife to calm her down and explain they were conducting the purchase that way to secure Sister's money. It stated further:

A bank would have a lean [sic] on the house but she couldn't. My sister

didn't ask for this, I offered knowing the situation. If things go well for us, we

will refinance the house, pay back their money, transfer it back to our

names, and everyone is happy. She is helping us so we could save $50k

with paying cash. I tried to explain this at least 9999999 times, but she

wouldn't believe me. She has been furious and not making sence [sic] in

any conversation and anytime we start talking, it doesn't get anywhere, so

I gave up.

(Dec. 27, 2018 Judgment Entry).

{¶71} Upon this record, we find the trial court as the finder of fact did not err when it weighed the evidence, considered the credibility of the witnesses, and determined Husband engaged in financial misconduct as to the purchase of the marital home. Husband argued the goal was for Husband and Wife to regain ownership of the marital home, but after the purchase of the home, Husband gave Sister $100,000 but Sister did not transfer the marital home back to the couple. Husband and Sister gave different reasoning for the payments. Husband described the payments as rent or payments for the benefit of his parents. Sister described the payments as love and affection between siblings. The trial court questioned the credibility of the witnesses due to their differing reasons for the transfers of money. The evidence shows that during the purchase of the marital home, Husband chose to benefit his Sister financially, while interfering with Wife's ownership interest in the marital home.

{¶72} We overrule Husband's third Assignment of Error.

**V.**

{¶73} Husband contends in his fifth Assignment of Error that the trial court abused its discretion when it ordered Husband to pay Wife $80,000 as a portion of her attorney and expert fees in lieu of a distributive award due to Husband's financial misconduct. We disagree.

{¶74} Pursuant to R.C. 3105.171(E)(4), "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.73(A) reads:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶75} It is well-established that an award of attorney fees is within the sound discretion of the trial court. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, 2015 WL 1976430, ¶ 20 citing *Foppe v. Foppe*, 12th Dist. Warren No. CA2010–06–056, 2011–Ohio–49, ¶ 34. An abuse of discretion is more than an error

of law; it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶76} Husband argues that the attorney's fees testified to by Wife covered more than the divorce proceeding or to litigate Husband's alleged financial misconduct. Husband states that Wife litigated two actions against Sister, an eviction action and a frivolous conduct action, in the Delaware County Court of Common Pleas, General Division. He argues Wife's evidence presented during the divorce proceeding showed that Wife's attorney's fees were not generated while pursuing Husband's alleged financial misconduct.

{¶77} Husband has not cited any case law or statute to this Court to support his argument that the trial court is only permitted to award attorney's fees specifically related to the alleged financial misconduct. We find that Sister's eviction action against Wife is directly related to Husband's financial misconduct as to the transfer of ownership of the marital home to Sister. Sister filed a complaint for eviction, declaratory judgment, and ejectment against Wife in the Delaware County Court of Common Pleas, General Division on April 6, 2017. The matter was stayed pending the resolution of the divorce proceedings.

{¶78} Husband's fifth Assignment of Error is overruled.

**VI.**

{¶79} Husband argues in his sixth Assignment of Error that the trial court abused its discretion when it failed to rule on his motions to access the marital property to retrieve items related to Valcon Consulting Group, LLC. Husband contends the trial court's failure

to rule and failure to allow him access to the marital home prevented him from establishing his loss of income.

{¶80} On July 11, 2017, Husband filed a Notice and Motion to Enter Property to inspect the marital home and remove his personal belongings. Wife responded to motion on July 13, 2017. On November 29, 2017, Sister filed a motion to compel discovery regarding the entry and inspection of the marital home. Wife responded to motion on December 1, 2017. Husband filed a motion to enter the property on December 5, 2017. On December 7, 2017, the trial court denied Sister's motion to allow her and a property inspector to enter the marital home for discovery purposes. On December 11, 2017, Wife filed a motion for protective order to prevent Husband from personally inspecting the marital home. On December 19, 2017, the trial court issued a "Judgment Entry En Banc" stating it had considered the numerous pleadings, counter pleadings, motions, and memoranda filed by the parties. After a review of the totality of the filings and the docket, the trial court overruled all pending motions. In the December 27, 2018 Final Judgment and by judgment entry issued on January 17, 2019, the trial court awarded Husband all business equipment, office furniture, hard drives, and project plan rolls related to Valcon Consulting Group.

{¶81} Husband contends the trial court failed to rule on his motions for entry to the marital property, which limited his ability to present evidence of his income at trial. Upon our review of the docket, we find the trial court denied Husband's motions for access on December 19, 2017.

{¶82} We find Husband's argument as to the trial court's ruling on Husband's access to the marital home sounds in discovery. In the regulation of discovery, the trial

court has discretionary power and its decisions will not be overturned absent an abuse of that discretion. *Cooley v. Hartland*, 5th Dist. Licking No. 14-CA-51, 2014-Ohio-5452, 2014 WL 7004760, ¶ 13 citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996); *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57, 295 N.E.2d 659 (1973). An appellate court reviews a claimed error relating to a discovery matter under an abuse-of-discretion standard. *Lightbody v. Rust*, 137 Ohio App.3d 658, 663, 739 N.E.2d 840 (8th Dist.2000); *Trangle v. Rojas*, 150 Ohio App.3d 549, 782 N.E.2d 617, 2002–Ohio–6510 (8th Dist.). Under this standard, reversal is warranted only where the trial court's attitude was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶83} We find no abuse of discretion for the trial court to deny Husband's motion for entry into the marital home to inspect the property and retrieve business items. Husband contends he could not establish his loss of income, but the trial court established Husband's income at $82,000, which Husband has not appealed.

{¶84} Husband's sixth Assignment of Error is overruled.

**VIII.**

{¶85} In Husband's eighth Assignment of Error, he argues the trial court abused its discretion as to the award of spousal support to Wife. The trial court ordered Husband to pay spousal support in the amount of $500.00 per month, commencing the later of March 1, 2019 or Wife's vacating of the marital home, for up to 60 months.

{¶86} A trial court has broad discretion in determining a spousal support award. *Neville v. Neville*, 99 Ohio St.3d 275, 2003–Ohio–3624, 791 N.E.2d 434; *Stevens v. Stevens*, 23 Ohio St.3d 115, 492 N.E.2d 131 (1986); *Blakemore, supra*.

{¶87} R.C. 3105.18 governs spousal support. Subsection (C) states the following:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶88} Trial courts must consider all the relevant factors listed in R.C. 3105.18(C). However, a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist). The trial court need only set forth sufficient detail to enable a reviewing court to determine that appropriateness of the award. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶89} Husband and Wife were married on November 16, 2009 and the marriage terminated on December 27, 2016. The duration of the marriage was approximately seven years. The trial court calculated Husband's income as $82,000, which Husband has not disputed on appeal. The trial court believed the vocational expert's calculation of Husband's income was low and would increase after the divorce. The trial court found Wife's income was $67,145.94. The trial court considered the R.C. 3105.18(C) factors and found the parties were similar in health and age; the parties' retirement benefits were

divided equally; their standard of living during the marriage was middle to high-middle class; both had advanced degrees, although Wife had to achieve licensure to maximize her degree; Husband had non-marital assets while Wife had none; and under the current law, spousal support payments would be taxable to Wife and deductible by Husband.

{¶90} Husband first contends the trial court erred as to the duration of the spousal support. On March 9, 2017, Sister filed a Motion for Temporary Order requesting the trial court to order Wife to pay reasonable rent to Sister while Wife and G.S. resided in the marital home. The trial court previously ordered Husband to pay the marital residential expenses. On April 11, 2017, the trial court ordered Husband to pay rent to Sister for the marital home in the amount of $4,000 per month, an amount established by Sister. In the trial court's December 27, 2018 Final Judgment, the trial court continued the temporary orders until the spousal and child support commences but not beyond March 1, 2019. Husband states that from April 11, 2017 to March 1, 2019, Husband paid for Wife's living expenses, in lieu of spousal support; therefore, Husband contends he has paid spousal support for longer than the duration of the marriage. Husband contends that during this time, he was renting a condominium owned by Sister.

{¶91} As for the trial court's temporary orders requiring Husband to pay rent on the marital home, we find Husband's hardship arguments to be disingenuous. Husband was ordered to pay rent to Sister. The record in this case shows that Husband and Sister regularly provided financial support to one another and this is specifically demonstrated by the agreement to purchase the marital home. Upon review, in light of the factors set forth in R.C. 3105.18(C)(1) and based upon the facts and situation of the parties in this case, we cannot say the trial court abused its discretion in awarding Wife spousal support

for 60 months in the amount of $500.00, or that the decision was against the manifest weight of the evidence.

{¶92} Husband next argues the trial court erred when it found under R.C. 3105.18(C)(a) that the parties' incomes were nearly equal after child support was exchanged. The trial court found that Husband earned $82,000 and Wife earned $67,145.94. Husband was ordered to pay $742.08 per month in child support. 12 months of child support equates to $8,904.96. Husband's income would be $82,000 minus $8,904.96 which is $73,095.04. Wife's income would be $67,145.94 plus $8,904.96 which is $76,050.90. This is a $2,955.86 difference between Husband's and Wife's incomes. In its judgment entry, the trial court stated "nearly equal," not "equal." We find no abuse of discretion to find the incomes were equitable, not equal.

{¶93} Husband's eighth Assignment of Error is overruled.

**IX.**

{¶94} Husband argues in his ninth Assignment of Error that the trial court erred as a matter of law when it calculated Husband's child support obligation.

{¶95} Determinations on child support are within a trial court's sound discretion. *Norman v. Norman*, 5th Dist. Tuscarawas No. 2018 AP 02 0007, 2018-Ohio-3641, 2018 WL 4348250, ¶ 7 citing *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶96} Husband argues the trial court failed to deduct spousal support from Husband's income and add it to Wife's income on the child support calculation worksheet. The version of R.C. 3119.05 in effect at the time of the divorce stated as follows:

When a court computes the amount of child support required to be paid under a court child support order or a child support enforcement agency computes the amount of child support to be paid pursuant to an administrative child support order, all of the following apply:

* * *

(B) The amount of any pre-existing child support obligation of a parent under a child support order and the amount of any court-ordered spousal support actually paid shall be deducted from the gross income of that parent to the extent that payment under the child support order or that payment of the court-ordered spousal support is verified by supporting documentation.

{¶97} Upon the precedent of this Court's decisions in *Worley v. Worley*, 5th Dist. Licking No. 06-CA-63, 2007-Ohio-252 and *Pelger v. Pelger*, 5th Dist. Stark No. 2005CA00075, 2005-Ohio-6067, we find the trial court should have included the spousal support payment awarded in the divorce decree in the relevant lines of the child support calculation worksheet. "[C]ourt-ordered spousal support payments should be included in the relevant lines in the child support worksheet." *Pelger v. Pelger*, 3rd Dist. Logan No. 8-18-36, 2019-Ohio-1280, 2019 WL 1514548, ¶ 9 citing *Foy v. Foy*, 9th Dist. Medina No. 14CA0113-M, 2016-Ohio-242, ¶ 20. This includes spousal support "ordered and anticipated to be paid in the instant, subject order." *Worley v. Worley*, 5th Dist. Licking No. 06-CA-63, 2007-Ohio-252, ¶ 26.

{¶98} As such, we find the trial court abused its discretion as to the calculation of child support and the matter is remanded to the trial court for further proceedings.

{¶99} Husband's ninth Assignment of Error is sustained.

**X.**

{¶100}    In Husband's tenth Assignment of Error, he argues the trial court erred when it found him in contempt of court for his failure to reimburse Wife for ordered expenses for G.S. We disagree.

{¶101}    On October 5, 2017, Wife filed a motion for contempt against Husband. In her motion, she argued Husband was in contempt of temporary orders to pay expenses for the marital home and expenses for G.S. The trial court granted Wife's motion for contempt in the December 27, 2018 Final Judgment. The trial court sentenced Husband to ten days in the Delaware County Jail, which he could purge by direct payment from Husband to Wife of $2,369.98 within 60 days of the Final Judgment, plus $1,000.00 in expense money.

{¶102}    A trial court's decision regarding contempt will not be reversed absent an abuse of discretion. *Gunawardena v. Gunawardena*, 5th Dist. Delaware No. 14 CAF 06 0035, 2015-Ohio-2566, ¶ 1, citing *Beltz v. Beltz*, 5th Dist. Stark Nos. 2005CA00193, 2005CA00194, 2006-Ohio-1144. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore, supra*.

{¶103}    Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein." *Mohr v. Mohr*, 5th Dist. Morgan No. 16AP0007, 2017-Ohio-1044, 2017 WL

1090984, ¶ 15, quoting *McKinney v. McKinney*, 5th Dist. Stark No. 2014CA00118, 2015 WL 1331886, ¶ 11–12 quoting *Beach v. Beach*, 99 Ohio App. 428, 431, 130 N.E.2d 164 (1955). The burden of proof for civil contempt is clear and convincing evidence. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259, 27 N.E.3d 877, ¶ 34, citing *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP–1176, 2011-Ohio-5972.

{¶104} On appeal, Husband first argues the trial court should have found Wife in contempt because she changed the health insurance plan in contravention of the trial court's restraining order. Wife provided the family's health insurance and she changed to her employer's high deductible health plan. She did not provide Husband with access to the health savings account, requiring Husband to pay out of pocket for his and G.S.'s medical expenses. On October 3, 2017, Husband filed a renewed motion for hearing pursuant to Civil Rule 75 for modification of current temporary orders and a supplemental motion for contempt where he raised the issue of the health savings account. Husband next argues that the expenses Wife claimed were not supported by the evidence.

{¶105} Upon the review of the record, we can find no abuse of discretion for the trial court to find Husband in contempt of the temporary orders. In his assignment of error, the majority of his argument is the trial court's failure to find Wife in contempt. He further does not direct this Court to the record to support his contention that Wife's expenses were against the manifest weight of the evidence. App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of

the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relied."

{¶106}　　　Husband's tenth Assignment of Error is overruled.

**XI.**

{¶107}　　　Husband contends in his eleventh Assignment of Error that the trial court erred when it named Wife as the residential parent and legal custodian of G.S. We disagree.

{¶108}　　　On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001CA00039, 2001-Ohio-1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶109}　　　The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77,

461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings were correct. *See, Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶110}     R.C. 3109.04(F)(1) sets forth the following factors for the court to consider when determining the best interests of a child in allocating parental rights:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶111}        Father filed a shared parenting plan. With regard to whether shared parenting is in the child's best interest, the trial court must consider the additional factors set forth in R.C. 3109.04(F)(2). *Lykins v. Lykins*, 12th Dist. Clermont No. CA2017-06-028, 2018-Ohio-2144, 2018 WL 2670928, ¶ 22 citing *Adkins v. Adkins*, 12th Dist. Butler No. CA2016-12-227, 2017-Ohio-8636, ¶ 11. These factors include (1) the ability of the parents to cooperate and make decisions jointly, (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent, (3) any history or potential for abuse, (4) the geographic proximity of the parents to one another, (5) and the recommendation of the guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21.

{¶112}      The trial court conducted an in camera interview with G.S. on August 15, 2018. The GAL submitted her final report and recommendation on August 27, 2018, which recommended that it was the best interest of the child that Mother be named residential parent and legal custodian. In its December 27, 2018 Final Judgment, the trial court adopted the GAL's final report and recommendation. The trial court stated as follows:

> This is no way disregards the fact that both parents love their child, and their daughter loves and needs them both in her life. * * * The ongoing conflict between the parents from the earliest days of their marriage in this writer's opinion disqualifies shared parenting as an option at this time. * * * Father's efforts at anger management is laudable but does not negate the years of physical and emotional violence by him towards the mother. Mother was described as emotional, an agitator, and defiant. This may provide context to the parties' volatile relationship but does not provide justification. As Dr. Doumet testified, there is no trust or respect by either parent toward the other.

(Dec. 27, 2018 Judgment Entry). The trial stated it considered the R.C. 3109.04(F) factors as stated in the GAL's report and based upon the testimony presented at trial.

{¶113}      The evidence in this case supports the trial court's consideration of the R.C. 3109.04(F) factors. Husband's family testified that they observed and tried to intervene in the volatile relationship between Wife and Husband. G.S. witnessed domestic violence between Husband and Wife. At the time of trial, Husband had completed an anger management course and was in counseling. Mother was also in counseling.

Because Father's business was located in the home, Father stayed home with G.S. while Mother worked outside of the home, until the trial court granted the civil protection order. There was no evidence that Father mistreated or was not loving towards G.S. The issue impacting custody between Husband and Wife was their inability to co-parent G.S., which negated an award of shared parenting.

{¶114}　　　Upon this record, we find Husband's argument that the trial court abused its discretion in designating Wife as the child's residential parent and legal custodian rather than ordering shared parenting is without merit.

{¶115}　　　Husband's eleventh Assignment of Error is overruled.

## CONCLUSION

{¶116}　　　The judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed and remanded as to only the child support calculation worksheet.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.